

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CORNERSTONE, INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> JEFF CADIEUX, individually, and JEFF CADIEUX, as trustee of the Cadieux Family Trust, <br><br> Defendants/Counterclaimants. | CV 18–58–M–DWM <br><br><br> ORDER |

This suit involves the construction of a home in Philipsburg, Montana and the general contractor's filing of a construction lien. The general contractor Cornerstone, Inc. sued homeowner Jeff Cadieux for breach of contract and foreclosure of the lien, among other things. Cadieux has moved for judgment on the pleadings on Cornerstone's claims for breach of contract (Count I) and foreclosure (Count II). (Doc. 14.) For the following reasons, Counts I and II are dismissed, but Cornerstone is granted leave to amend.

## BACKGROUND

From February 2017 until at least April but perhaps as late as June 2017, Cornerstone and Cadieux negotiated a written contract for the construction of a residence in Philipsburg. (Compl., Doc. 3 at 2, ¶¶ 8–9; Ans., Doc. 4 at 3, ¶¶ 8–9.)

1

Cornerstone claims the written contract was never executed but that the parties entered an oral agreement in March 2017. (Compl., Doc. 3 at 3, ¶ 10.) Cadieux responds that the written contract was executed in late May or early June 2017. (Ans., Doc. 4 at 3, ¶ 10.) In any event, the parties agree Cornerstone's fee was 12% of certain construction costs. (Compl., Doc. 3 at 3, ¶ 13; Ans., Doc. 4 at 4, ¶ 13.) However, they dispute the projected total of those costs. (Compl., Doc. 3 at 3, ¶ 12; Ans., Doc. 4 at 4, ¶ 12.)

In March 2017, Cadieux paid a $15,000 deposit to Cornerstone. (Compl., Doc. 3 at 4, ¶ 14; Ans., Doc. 4 at 4, ¶ 14.) Construction began in April or May 2017. (Stip. Facts, Doc. 8 at 2.) Over time, Cadieux made additional payments of $4,945.19, $6,075.14, and $15,042.37 for work on the home. (*Id.*) But in October 2017, Cadieux terminated Cornerstone from the project. (*Id.* at 3.) In December 2017, Cornerstone filed a construction lien on the property for $58,094.50. (*Id.*) The amount represents $35,477.52 that Cornerstone claims in costs and $22,616.98 in construction fees. (Compl., Doc. 3 at 5, ¶ 22.)

On February 1, 2018, Cornerstone filed this action in state court for breach of contract, foreclosure of the lien, unjust enrichment, promissory estoppel, and fraud, among other things. (Compl., Doc. 3.) Cadieux removed to this Court on March 13, 2018. (Doc. 1.) On March 19, 2018, he filed an Answer and Counterclaim alleging slander of title, breach of contract, fraud, negligent misrepresentation, and negligent

2

construction. (Doc. 4.) On February 29, 2019, he filed the present motion. (Doc. 14.)

## Legal Standard

Federal Rule of Civil Procedure 12(c) provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Dismissal under Rule 12(c) is warranted when, taking the allegations in the complaint as true, the moving party is entitled to judgment as a matter of law." *Daewoo Elec. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017). However, dismissal without leave to amend is inappropriate unless it is clear the complaint cannot be saved. *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012).

When a party presents matters outside the pleadings on a Rule 12(c) motion, as Cornerstone has done here, the court can either exclude those matters or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). Because Cadieux's motion can be resolved on the pleadings alone, Cornerstone's outside materials are excluded for present purposes.

## Analysis

Under Montana law, "[a]ll contracts may be oral except such as are specially required by statute to be in writing." Mont. Code Ann. § 28-2-901. "An oral contract, when expressly required to be in writing, is void." *Mandell v. Ward*, 377

3

P.3d 1228, 1233 (Mont. 2016). Montana Code § 28-2-2201 requires a residential construction contract, defined as "a contract between a general contractor and an owner for the construction of a new residence," to be in writing. Accordingly, as the Montana Supreme Court explicitly held in *Mandell*, oral residential construction contracts are void. 377 P.3d at 1233. *Mandell* also held that because a contractor's right to a construction lien depends on a valid contract, a void contract invalidates the corresponding lien. *Id.*; *see also* Mont. Code Ann. § 71-3-523.

Here, Cornerstone has specifically alleged that the parties entered an oral residential construction contract. The Complaint states, "Although the written contract was never executed by the parties to it, on or about March 16, 2017, Defendants and Plaintiff entered into an oral agreement to construct the residence . . . ." (Compl., Doc. 3 at 3, ¶ 10.) Count I explicitly claims "Breach of Oral Contract" and refers repeatedly to "the oral agreement." (*Id.* at 6–7, ¶¶ 26–35.) However, Cornerstone attached the written contract the parties allegedly negotiated as Exhibit A to its Complaint, complicating the analysis. (*See* Doc. 3-1.) "When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment." *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

It is unclear what Cornerstone meant to allege by attaching the unexecuted

written contract to the Complaint. While parties can plead alternative or inconsistent claims, Fed. R. Civ. P. 8(d), Cornerstone has not done so here. Even when construing the pleadings in favor of Cornerstone, as required at this stage, Cornerstone has exclusively alleged that the contract was oral. Cornerstone could have alternatively alleged that the contract was written *and* oral. Or, Cornerstone could have pled a general "breach of contract" claim, rather than "breach of oral contract," allowing an interpretation of Exhibit A as an allegation that a written contract existed. Instead, the Complaint's plain language alleges the parties entered an oral contract, and only an oral contract. The alleged oral contract is void as a matter of law under *Mandell* and therefore cannot form the basis of a breach of contract claim or a construction lien. 377 P.3d at 1233.

Cornerstone argues § 28-2-2201 is akin to a statute of frauds, such that equitable principles that take a contract out of the statute of frauds should apply here. Montana's Statute of Frauds, codified at § 28-2-903 and §70-20-101, requires certain contracts to be in writing. *See Hayes v. Hartelius*, 697 P.2d 1349, 1353 (Mont. 1985). Generally, though, the parties' admission that a contract exists or their partial performance renders the Statute of Frauds inapplicable. *Id.* Both circumstances are present here. Cornerstone thus contends that § 28-2-2201's writing requirement is inapplicable.

*Mandell* did not address whether § 28-2-2201's writing requirement is subject

to the same equitable exceptions as the Statute of Frauds. However, like in this case, the parties in *Mandell* admitted the existence of an oral contract and had partially performed. *See* 377 P.3d at 1230–31. *Mandell*'s silence on those issues likely reflects the different purposes of the Statute of Frauds and § 28-2-2201. A statute of frauds is meant to avoid fraud. *Hayes*, 697 P.2d at 1353. *Mandell*'s passing references to § 28-2-2201's legislative history suggest its writing requirement is meant to protect homeowners. 377 P.3d at 1233. That purpose is evident in the substantive requirements § 28-2-2201 imposes on residential construction contracts, such as the requirement to include a payment schedule, a procedure for handling change orders, and an express warranty.[1] While preventing fraud may be one aim of

---

[1] Section 28-2-2201 requires all residential construction contracts to contain:
    (a) a disclosure that the general contractor has a current general liability policy;
    (b) a disclosure that the general contractor has a workers' compensation policy or is an independent contractor without employees;
    (c) a provision setting out the billing cycle establishing the payment schedule to be followed by the owner;
    (d) a provision establishing procedures for handling change orders by the owner;
    (e) a statement of all inspections and tests that the general contractor will perform or have performed prior to, during, or upon completion of construction and a statement that the owner is entitled to receive the results of any tests conducted by the general contractor or conducted at the general contractor's request;
    (f) a statement that the owner is entitled at the owner's expense to have any inspections and tests conducted that the owner considers necessary; and
    (g) a statement that the general contractor is providing an express warranty that is valid for a period of at least 1 year from completion of the

§ 28-2-2201, these requirements show it also has different or additional purposes, like providing transparency to homeowners during the construction process. And while the Statute of Frauds and § 28-2-2201 are similar in some respects, namely their writing requirements, that does not mean the same equitable exceptions apply to both. In any event, this Court will refrain from crafting equitable exceptions to a Montana statute where the Montana Supreme Court declined to do so on analogous facts.

Next, Cornerstone argues the Montana Supreme Court abandoned *Mandell* in *Vintage Construction, Inc. v. Feigner*, 394 P.3d 179 (Mont. 2017). Like this case, *Vintage* involved a dispute between a homeowner and general contractor. *See id.* at 182. The parties did not execute a signed contract, but the general contractor provided a written estimate. *Id.* When the homeowner refused to make payments due to problems with the driveway, the general contractor filed a construction lien. *Id.* at 184. Though the trial court did not enforce the lien, it awarded contract damages to the general contractor. *Id.* On appeal, the Montana Supreme Court determined that the written estimate formed the basis of a contract, thus contract damages were appropriate. *Id.* at 186.

---

        construction project. The warranty must provide detailed descriptions of those components that are included or excluded from the warranty, the length of the warranty, and any specialty warranty provisions or time periods relating to certain components. The warranty provisions must also clearly set forth the requirements that must be adhered to by the buyer, including the time and method for reporting warranty claims, in order for the warranty provision to become applicable.

According to Cornerstone, this holding—finding a contract where there was no signed writing—tacitly overruled *Mandell*. But *Vintage* never mentions *Mandell* or § 28-2-2201. At most, then, *Vintage* suggests that a written estimate satisfies § 28-2-2201's writing requirement. It does not call that requirement or *Mandell* into question. Further, Cornerstone's statement in its Complaint that the parties entered an oral contract is a binding judicial admission. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). The admission bars an inquiry into whether some document might form the basis of a written contract like the estimate did in *Vintage*. Governing law requires the residential construction contract to be in writing, and Cornerstone has admitted that it was not. Accordingly, Cornerstone's claims for breach of contract and foreclosure of the corresponding lien fail as a matter of law.

Cornerstone further contends Cadieux should be estopped from arguing that no written contract existed in light of the Answer's allegations that a written contract was executed. (*See* Ans., Doc. 4 at 3, ¶ 10.) But as discussed above, Counts I and II of the Complaint fail on their own terms, without regard to the Answer. Still, allowing Cadieux to benefit from an argument that is inconsistent with his own judicial admissions raises equitable concerns. Those concerns along with the Federal Rules' instructions that "[p]leadings must be construed so as to do justice," Fed. R. Civ. P. 8(e), and that leave to amend should be freely given "when justice so

8

requires," Fed. R. Civ. P. 15(a)(2), counsel against dismissal with prejudice.

## CONCLUSION

IT IS ORDERED that Cadieux's Motion for Judgment on the Pleadings (Doc. 14) is GRANTED. Counts I and II of the Complaint are dismissed with leave to amend. An amended complaint shall be filed within 14 days of the date of this Order.

IT IS FURTHER ORDERED that Cadieux's Motion for Extension of Time to File Reply Brief (Doc. 18) is DENIED as MOOT.

DATED this 19th day of March, 2019.

Donald W. Molloy, District Judge
United States District Court